BIchaudson, J.,
delivered the opinion of the court:
On the 2d of February, 1874, the claimant filed in this court his petition,.alleging in substance that in the year 1869 he was assessor of internal revenue in the State of Texas; that a false charge was made against him, to the effect that he was interested in the business of a certain firm, which, it was charged, *332 was engaged in the illicit manufacture of whisky; that it was falsely charged against him that he had been guilty of receiving a bribe from said firm ; that afterward, in May, 1870, indictments were procured against him by unlawful means in the United States district court for the western district of Texas, based upon said charges of bribery and complicity with said firm. He further alleges that, in order to avoid the expense and trouble of defending himself against said indictments, he submitted, on the 15th of November, 1870, to the Commissioner of Internal Revenue, through the collector of his district, a proposition to pay to the United States the sum of $1,250, by way of a full compromise of all said matters standing against him, and at the same time, in order to facilitate such settlement, he deposited with the collector, subject to the order of the Secretary of the Treasury or the Commissioner, the sum of $1,250, to be appropriated to the payment of the proposed compromise when the same should be accepted by the United States; that said proposed compromise was subsequently rejected by the United States, and has never been accepted; that afterward said indictments were abandoned, and a nolle prosequi entered thereon; that the said $1,250 was paid over to the assistant treasurer at New Orleans, by him accounted for, and “covered into the Treasury of the United States.” where it now remains; and although he has frequently applied therefor to the Treasury Department, the United States have refused and still refuse to return the same.
On the 2d of December, 1875, the defendants filed a plea to the jurisdiction of the court. On the 23d of January, 1877, they also filed a special plea that the claimant ought not to have and maintain his action, because, they say in substance, that on or about the time said money was deposited the assessor of internal revenue made an assessment of $8,000 against the claimant and others as a tax and penalty for manufacturing spirits in 1867 and 1868, on joint account with the firm mentioned in the petition, which assessment was returned to the collector November 19,1870, on a special list; that before the rejection of the claimant’s offer of compromise, of which the claimant was notified February 3, 1871, the collector had applied said money to the payment, so far as it would go, of said assessment, and accounted for the same in his reports, and the *333 money was subsequently covered iuto the Treasury by au internal-revenue warrant.
To this plea the claimant demurs.
The first question presented for our consideration is whether or not the court has jurisdiction of the case.
The Assistant Attorney-General, in behalf of the defendants, relies upon Nicoll et al. v. The United States, (7 Wall. R., 122,) as conclusive authority that this case belongs to a class over which this court has no jurisdiction, and the closing paragraph of the opinion delivered by the learned judge in that case is cited to us, as it has often been before, as laying down a general rule on that subject applicable to all cases arising under the revenue' laws, whatever be their nature. The learned judge said: “Without pursuing the subject further, we are satisfied that cases arising under the revenue laws are not within the jurisdiction of the Court of .Claims.”
Broad and decided as is this language, it must be considered and construed with reference to the issues raised and the points involved in that case, which, of course, did not present all the questions of jurisdiction which may arise in a great variety of forms, in numerous cases of entirely different character, under the revenue laws; and we think the court did not intend in that one action and by that one remark to lay down a general rule for the determination of all such questions in advanee of presentation and argument.
The claimant in that action sought to recover back money paid by him for duties on imports which he claimed were erroneously assessed. For claims of that class the statutes have provided a specific remedy, requiring the claimants, as a condition-precedent to any right of recovery, to make'protest in writing before or at the time of paying the duties assessed, and authorizing them thereafter to bring actions against the collector, in the commori'-law courts of the United States, to determine before a jury the correctness of the assessment. (Rev. Stat., §§ 3011, 3012.) The court held that this was the sole remedy, excluding the jurisdiction of this court, and it is difficult to see how the decision could have been otherwise. Beferr ring to the statutes the learned judge says: “ These laws constitute a system which Congress has provided for the benefit of those persons who complain of-illegal assessments of taxes and illegal exactions of duties.” It was with reference to the system *334 thus provided in the revenue statutes for the benefit of persons who complain of illegal assessment of taxes and duties that the closing paragraph of the opinion cited was written, rather than with reference to the whole of all the revenue laws of the United States, as a superficial reading might indicate.
It would seem logically to follow that in all cases — whether under the revenue laws or any other laws in which Congress has provided a specific system adequate, in the opinion of the law-making power, to the investigation and recovery of legal claims of any particular class due from the Government, intrusting the determination of the rights of the parties to the judgment and discretion of specified executive or other officers, and a final enforcement to other tribunals than this court under special limitations and restrictions — such jurisdiction is exclusive, and furnishes the only remedy to claimants of that class.
The reasons cursorily suggested by the learned judge for the system would not seem to require an extension of the rule as to jurisdiction beyond the classes we have mentioned. He says: “The prompt collection of the revenue, and its faithful application, is one of the most vital duties of Government. Depending, as the Government does, on its revenue, to meet not only its expenses, but to pay the interest on its debt, it is of the utmost importance that it should be collected with dispatch, and‘that the officers of the Treasury should be able to make a reliable estimate of means in order to meet liabilities. It would be difficult to do this if the receipts from duties and internal taxes paid into the Treasury were liable to be taken out of it on suits prosecuted in the Court of Claims for alleged errors and mistakes, concerning which the officers charged with the collection and disbursement of the revenue had received no information. Such a policy would be disastrous to the finances of the country; for, as there is no statute of limitation to bar such suits, it would be impossible to tell in advance how much money would be required to pay the judgments obtained on them, and the result would be that the Treasury estimates for any current year loould be unreliable.”
Now, as to claims arising under the revenue laws, depending upon the construction of statutes or contracts, for the recovery or payment of which Congress has required no notice, demand, protest, or submission to the judgment and discretion of any *335 revenue or other executive officer or special judicial tribunal, there would seem to be no more reason for excluding the jurisdiction of this court over the same than over cases founded on other laws of Congress, under like conditions, of which this court has general jurisdiction. (Rev. Stat., § 1059.) The officers charged with the collection and disbursement of the revenue have no more information concerning the former than they have concerning the latter. The general jurisdiction of this court is expressly limited to cases commenced within six years after the claim first accrues, (Rev. Stat., § 1069,) and notwithstanding that, at all times, there are hundreds of actions pending in the common-law courts against collectors under the special system to which the rule in Nicoll’s Case clearly refers, actions in which the judgments recovered by the plaintiffs'are payable out of the public money, and the decisions of which often have important effect upon the revenues, the judgments of the Court of Claims are the only judgments for which estimates have ever been included in the book of estimates annually submitted to Congress through the Secretary of the Treasury, (Rev. Stat., § 3669,) or otherwise made or required.
There are many claims which may arise under the revenue laws, founded on statute, contract, or the regulations of the Treasury Department, for the investigation, determination, or enforcement of which no special system has been prescribed by Congress, and for the recovery of which the only remedy must be jn this court under the provision's of the Revised Statutes. (§1059.) There are claims for salaries by revenue officers of which this court has taken jurisdiction and given judgment against the United States in five cases. (McLean's Case, 8 C. Cls. R., 217; Neff’s Case, id., 233; Bachelor’s Case, id., 235; Patten’s Case, 7 id., 362; and Luce’s Case, 10 id., 230.) A case arose also upon the construction of section 161 of the internal-revenue act of 1864, chapter 173, (13 Stat. L., 294,) the claimant demanding a commission of 10 per cent, on his entire purchase of stamps, to the amount of more than $500 at one time, and the defendants contending that to the extent of $500 of the amount he was entitled to only 5 |)er cent, commission. No special remedy being provided by statute for such a case, the court took jurisdiction and gave judgment for the claimant. (Daily’s Case, 7 C. Cls. R., 383.)
*336 In all these cases the 'Attorney-General acquiesced in the jurisdiction and judgment of this court, and took no appeal..
In Kaufman's Case (11 id., 659) the claimant brought his action here to recover upon an allowance of refund of a tax paid by an internal-revenue special-tax stamp returned, awarded to him by the Commissioner of Internal Revenue and certified to the First Comptroller of the Treasury for payment, in accordance with the statutes and the regulations of the Department. The Comptroller refused to pass the account, and interposed objections which, if final, would thwart the action of the Commissioner and prevent the execution of the provisions of the regulations. The Commissioner had exhausted his power and jurisdiction by awarding the allowance; and the claimant could not maintain an action against the Commissioner nor against any collector, for the money was not in their control, but was to be paid by law from the Treasury. If, then, the claimant could not enforce his allowance by action here, he was entirely without remedy; the power of the Comptroller would be superior to that of the court over a claim founded on statute, regulations, and contract certainly embraced within the language and apparently within the spirit also of the section conferring jurisdiction on this court, and to that extent the beneficent provision of law for the refund of taxes excessively assessed would be defeated, and the statute nullified.
The court held that it had jurisdiction.
And in this case, after the money had .been covered into the Treasury, the Secretary had no power to refund it without an appropriation by Congress, and his jurisdiction in the matter was gone. (Constitution, Article I, section 9.)
But the case as set forth in the claimant’s petition does not arise under any revenue law, but is founded on contract. The claimant deposited his money with the collector of internal revenue, “'to be appropriated to the payment of the proposed compromise when the same should be accepted by the United States,” and it was so received by the collector. It was not deposited or received under any requirement of the statutes or regulations, although deposits in such cases are encouraged by the instructions of the heads of the Bureau and Department, and the transaction was purely voluntary on the part of both . officers and claimant. The collector paid the money to the defendants, and the same has been covered into the Treasury. *337 Thus the contract of the collector with the claimant has been adopted by the defendants as their own, and they are under the same obligation to return the money as the collector would have been had he retained it himself. More especially is this so because, as the petition alleges, the money was deposited subject to the order of the Secretary of the Treasury or Commissioner, to be appropriated as before stated.
The defendants, by their special plea, admit that they have rejected the claimant’s proposal of compromise, and as a defense say that the money deposited has been applied in part payment of an assessment for taxes and penalty made against the claimant by their officers, founded upon the very matters to which the imposition for compromise related, and this they did even before the proposition was rejected. This was certainly a breach of contract on their part.
The question of legality or illegality of the assessment of the tax and penalty is not raised by the pleadings, and is not in issue here, and if -it were it would be immaterial, according to the view we take of the law.
It is a principle too well settled to require further discussion that a pledgee cannot retain a pledge to secure other debts or to use for other objects than those for which it is given, and that a stakeholder cannot apply money deposited with him to a purpose different from that for which it was deposited without the consent of the pledgor, nor retain the same when those debts, objects, or purposes-have ceased to exist. (1 Parsons on Contracts, 601; 2 Greenleaf on Evidence, § 119; Cowling v. Beachum, 7 Moore, 465; De Bernales v. Fuller, 14 East., 590, n.; Hall v. Marston, 17 Mass., 575; Robinson et al. v. Frost, 14 Barb., 536; McNeilly v. Richardson, 4 Cowen, 607.) The same principle applies in cases in which the United States are parties as in cases between individuals. It was so advised by Mr. Evarts when he was Attorney-General, (12 Opins. of Atty. Gen., 549,) and has been so held by this court. (State National Bank, &c., v. The United States, 10 C. Cls. R., 545.).
The defendants’ officers had no more right to apply this money to the payment of the claimant’s taxes than they would have had to so apply money received by them under an agreement to use it in payment of his promissory note.or other debts to individuals. And the defendants having received the money upon the sole agreement to apply it to the payment of a pro *338 posed compromise, when accepted by them, had no right to reject the compromise and keep the money also. They elected to reject the compromise, and they are therefore liable to refund the deposit-money. And the defendants’ plea presents no valid defense to the action.
The demurrer is sustained.