In the Matter of the Application of JOSEPH MAKAMES, Respondent, for an Order to Determine an Alleged Attorney's Lien Claimed by RUSSEL S. JOHNSON and Another, Appellants.*

Fourth Department, June 7, 1933.

---

* Revg. 148 Misc. 759.

*Russel S. Johnson,* for the appellants.

*Woodward W. Guile,* for the respondent.

EDGCOMB, J. We have before us upon this appeal a proceeding involving an attorney's lien for professional services.

On June 27, 1929, a grocery store which was owned and operated by the petitioner, Joseph Makames, was destroyed by fire. He carried $6,000 insurance on the stock and fixtures. He retained appellants, a well-known firm of attorneys in the city of Utica, N. Y., to look after his interests in connection with the fire. They rendered professional services of more or less value, the amount of which is very much in dispute.

The fire loss was not paid, and the petitioner was compelled to sue the various insurance companies in an endeavor to recover the amount of his policies. He employed attorneys other than the appellants, as he had a perfect right to do, to bring these actions. As the time of trial drew near, respondent desired to get possession of these policies so that he might offer them in evidence as a part of his case, but appellants refused to surrender possession of the same until their bill for professional services rendered to the petitioner had been paid. Appellants fixed the value of such services at an amount which the petitioner claimed was grossly excessive, and which he was unable to pay. Accordingly Mr. Makames instituted this proceeding to have the amount of appellants' fees judicially fixed and determined. Instead of asking that said policies be turned over to him on payment of appellants' fees as fixed, Mr. Makames requested that the policies be produced upon the trial of said actions for the purpose of being used in the presentation of his case, under such conditions and restrictions as the court might deem proper for the protection of appellants' lien.

The appellants had a retaining lien upon these policies, as well as all other papers belonging to Mr. Makames which came into appellants' hands during the course of their employment. The extent of such lien is measured by the value of appellants' services. The lien continued until the attorneys' bill was fully paid. (*Matter of Sebring,* 238 App. Div. 281, and cases therein cited.)

If the only purpose of the petitioner was to compel the production of these policies upon the trial of the actions which he had commenced against the various insurance companies, so that the policies might be offered in evidence, we see no reason why respondent's purpose would not be amply served by the issuance of a subpœna *duces tecum.* When a third party has in his possession papers or documents which are material and relevant to the issues involved in a pending action, and such party is unwilling to produce

them upon the trial, he may be compelled so to do under a subpœna *duces tecum*. (*Aikin* v. *Martin*, 11 Paige Ch. 499.) Compulsory measures for the production of evidence are essential to the very existence of a court of justice in any civilized community. The court has inherent power to resort to such measures. If the appellants neglected or refused to attend in response to such subpœna, ample remedy is afforded the petitioner. Undoubtedly the court, upon the trial of these actions, would protect, so far as possible, appellants' lien, and would not compel appellants to surrender possession of the papers in their possession. They could be marked in evidence, and, if necessary, read into the record, and returned to appellants. If this was done, no claim could be made that appellants had lost their lien by a surrender of the papers in their possession.

The Special Term made an order which it deemed would properly protect the interests of all parties, and which would be fair and equitable under all the circumstances. The efforts of the court along this line are to be highly commended, but unfortunately we think that the court had no power to grant the particular order which was made.

The order requires the appellants to turn over to the petitioner, or to his attorneys in the actions brought by him against the insurance companies, the policies in their possession, upon the payment to them of the sum of fifty dollars, the amount of their disbursements; it is then provided that the appellants shall have a first lien upon all moneys recovered by the petitioner in the several actions against said insurance companies to the extent and value of their services performed for Mr. Makames, whether said moneys are recovered as a result of judgments in said actions, or upon settlements thereof, and that, if the parties cannot agree upon the value of appellants' services, the same shall be fixed by the court upon two days' notice.

Appellants' lien is a retaining and not a charging lien. Possession is indispensable to a retaining lien. (*Robinson* v. *Rogers*, 237 N. Y. 467, 470; *Matter of Heinsheimer*, 214 id. 361, 364; *Matter of Sebring*, 238 App. Div. 281.) Consequently, if the appellants comply with the order of the Special Term, and deliver to the petitioner the policies and other papers now in their possession, and accept in lieu thereof a lien upon any moneys which may be collected in the actions brought against the insurance companies, they will lose their present lien on those policies and other papers.

While a retaining lien amounts to nothing more than a right to hold the papers and property of a client, and while it has little more than a nuisance value, and cannot, under ordinary circumstances, be actively enforced, either at law or in equity, it is, never-

theless, a right which is given an attorney, and which must be respected.

While the court would have no power to substitute for a charging lien other security, and thereby release the lien (*Robinson* v. *Rogers*, 237 N. Y. 467), that is not true of a retaining lien. The retaining lien is a creature of the common law, and not of the statute. It has long been the practice to order an attorney to release his retaining or general lien upon papers and property in his hands, and to turn them over to his client upon the latter's giving a bond in a sufficient sum to pay whatever amount it might eventually be determined the client owed his attorney. This power to substitute adequate security for a retaining lien is derived from the inherent right which the court has to control its own officers, and to compel an attorney to act fairly and to deal equitably with his client. And while, as an abstract proposition, it might well be doubted if the court has a right to compel an attorney to deliver over possession of papers upon which he has a retaining lien, until any balance due him for professional services has been paid, the practice of ordering that to be done, where a pressing necessity exists, and where adequate security for the attorney's claim has been given, and his rights are fully protected, has long been recognized.

The decision of this appeal, therefore, depends upon the adequacy of the security which has been substituted for the lien which has been lost to the appellants. Remembering that appellants have the right, if they insist, to retain these policies and these papers until their bill for services has been paid, is the security specified in the order appealed from ample to protect the appellants, and to assure payment to them of their fees? I do not think so.

In the first place, we do not know what appellants' services are worth; they have not been judicially determined. The new security which has been given the appellants is a lien, not on anything in existence, but on something which may possibly come into existence in the future, and which, on the other hand, may never materialize. There is no certainty that the petitioner will ever recover a judgment on these policies, or that he will ever get a settlement from the insurance companies. If he is not successful in this litigation, appellants' security is worthless. They get nothing, except the disbursements to which they have been put. True the papers in appellants' possession, and to which their retaining lien attaches, are intrinsically worthless, and, if petitioner cannot recover on the policies, the nuisance value would be but little, yet appellants are legally entitled to retain what they already have, if they so desire, even though their judgment may not appear to be the best.

Furthermore, it appears that the petitioner has already assigned the moneys to be collected upon these policies as security for certain indebtedness which he is owing certain creditors. This assignment would apparently take precedence over the lien, and any money realized from said policies would go to the assignees to the extent of their claim, before it could be applied on appellants' bill. If that is so, it is very questionable whether the appellants would ever realize anything from this source, even if the petitioner was successful in his actions against the insurance companies.

We think that the court was without authority to grant the order appealed from, and that the matter should be remitted to the Special Term to determine the value of appellants' services, and to make such order as may be just and proper in the premises.

All concur, except THOMPSON, J., who dissents and votes for affirmance on the opinion of EDWARD N. SMITH, J., at Special Term. (—— Misc. ——.)

Order reversed on the law, with costs, and matter remitted to the Special Term to proceed in accordance with the opinion.