## In re WOODWORTH.

District Court, S. D. New York.
March 11, 1936.

292

Howard L. Hedden, of New York City, for Nyack Nat. Bank & Trust Co.

Thomas F. Kane, of New York City, for trustee.

PATTERSON, District Judge.

Woodworth was an attorney practising in the New York courts. In 1932 he was retained by the Nyack National Bank & Trust Company to institute suit on certain claims held by it, his compensation to be one-third of any recovery on the claims. Woodworth commenced suit in the bank's behalf in the New York Supreme Court. The case had not been reached for trial, however, when an involuntary petition in bankruptcy was filed against Woodworth on May 18, 1935. He was later adjudicated bankrupt, and a trustee was appointed who took possession of his property and papers. In July, 1935, Woodworth was disbarred as an attorney, because of conviction for felony. His disbarment had nothing to do with his conduct in the suit which he was prosecuting for the bank.

In October, 1935, the bank made a motion in the Supreme Court for an order of substitution of new attorneys in Woodworth's place and for an order requiring his trustee in bankruptcy to turn over to the new attorneys all pleadings relative to the suit. The trustee thereupon filed a petition with the referee in bankruptcy in charge of the Woodworth case, setting forth the facts mentioned above. On this petition he obtained an order for the bank to show cause why it should not be stayed from proceeding with its motion in the state court and why a further order should not be made fixing the amount of the trustee's lien on the papers. The trustee's theory was that Woodworth prior to bankruptcy had a lien on the papers to secure compensation for services then rendered, that on his bankruptcy the lien became an asset of the bankrupt estate, over which the bankruptcy court had sole jurisdiction, and that Woodworth's subsequent disbarment did not result in a forfeiture of compensation for work theretofore done. The referee held a hearing and ruled in favor of the trustee. He issued an order declaring that the trustee had a lien on the papers and pleadings, to cover the services rendered by the bankrupt to the bank, and restraining the bank from proceeding with its motion in the state court until the compensation of the bankrupt should be determined on a quantum meruit basis by the referee and until the compensation so fixed should be paid to the trustee. The bank brought the matter here on petition to review.

I am of opinion that the referee's order was erroneous. The trustee's petition should have been dismissed.

1. A bankrupt's rights under a contract to render personal services involving skill, for compensation not yet earned or accrued, the contract being uncompleted and unbroken at the time of bankruptcy, do not pass to the trustee as part of the bankrupt estate. They remain with the bankrupt. Villar & Co. v. Conde, 30 F.(2d) 588 (C.C.A.1); Streeter v. Sumner, 31 N.H. 542; Remington on Bankruptcy, § 1231; Loveland on Bankruptcy, page 419. The rule in England is the same. See Beckham v. Drake, 2 H.L. 579, 598; Bailey v. Thurston (1903) 1 K.B. 137.

The contract between the bankrupt and his client was of that character. The bankrupt was to prosecute a case for the client, his compensation contingent on success. The contract was one calling for personal skill; it was to be performed by the bankrupt and no one else. Baxter v. Billings, 83 F. 790 (C.C.A.8); Sargent v. McLeod, 209 N.Y. 360, 103 N.E. 164,

52 L.R.A.(N.S.) 380. It was still in course of performance at the time of bankruptcy. There was no compensation then earned or accrued, notwithstanding the bankrupt had done some work. The continuity of the contract and of the relationship of attorney and client created by it was not broken by the attorney's bankruptcy. He could still press on in performance. His trustee in bankruptcy certainly could not adopt the contract and insist on stepping into the bankrupt's place in the prosecution of the suit. The fact is that the trustee in bankruptcy had no control, concern, or pecuniary interest in the contract between the bankrupt and his client. The bankrupt's rights and duties under that contract did not pass to the trustee.

The papers in the suit follow the contract to which they are an incident. The trustee had them in his possession, but he had no lien. At and after the time of bankruptcy the lien belonged to the bankrupt personally. If any lien survived the bankrupt's later disbarment, it was his own lien, not the trustee's.

There is little in the way of authority on the effect of an attorney's bankruptcy on his contracts for contingent fees. In Re McAdam (D.C.) 98 F. 409, Judge Addison Brown said of a similar situation: "I am not wholly satisfied that the trustee might not be entitled to some pro rata part of any moneys hereafter realized on the bankrupt's contracts." The statement is only a dictum, and a somewhat noncommittal one. It was held in Re Furness, 75 F.(2d) 965 (C.C.A.2), that where the bankrupt was a testamentary trustee who had not yet accounted, the bankrupt estate had no interest in his prospective commissions. The analogy to this case, however, is not strong.

Since the trustee in bankruptcy had no pecuniary interest in the contract between the bankrupt and his client and had no lien on the papers, the referee should not have assumed jurisdiction of the matter.

█ 2. As already indicated, I am of opinion that the trustee in bankruptcy had no interest in the contract between the bankrupt and his client. But if we assume that the trustee had an interest, it could have been no broader than this, that in case the bankrupt later became entitled to compensation from his client the trustee might have the portion of such compensation attributable to the work done prior to bankruptcy. If it later turned out that the client owed the bankrupt nothing, then plainly the trustee as involuntary partial assignee of the bankrupt would get nothing.

█ The bankrupt's later disbarment put an end to his contract with the client and put it out of his power to get compensation. On principle it cannot be doubted that when an attorney makes an agreement to prosecute a case for a fee contingent on success and is disbarred before the fee is earned, he may not collect compensation from his client for the work done. The agreed fee he cannot have, because he has not performed his engagement and the contingency on which the compensation was to rest has not happened. Reasonable compensation in lieu of the fee he cannot have, because his inability to complete his contract has been brought about by his own wrongful conduct. The rule permitting recovery for reasonable value of services performed is based on quasi contract [Woodbury v. Andrew Jergens Co. (C.C.A.) 69 F.(2d) 49, 50], and is confined to instances where the attorney has been prevented from earning the agreed contingent fee without fault, as by illness, death, or discharge without fair cause. Mulqueen v. Commissioner, 65 F.(2d) 365 (C.C.A.2); Sargent v. McLeod, supra; Matter of Tillman, 259 N.Y. 133, 181 N.E. 75. It has never been thought to apply to a situation where the attorney abandons the case without justification. Woodbury v. Andrew Jergens Co., 61 F.(2d) 736 (C.C.A.2); Matter of Rieser, 137 App.Div. 177, 121 N.Y.S. 1070. By the same token the rule of reasonable compensation does not apply where the attorney is forced to relinquish the suit by reason of disbarment. His inability to perform his contract is the consequence of his own wrong. The only case in point seems to be Davenport v. Waggoner, 49 S.D. 592, 207 N.W. 972, 45 A.L.R. 1126. It was there held that an attorney who had a case on contingent fee and was barred from practice in the course of the case could not recover compensation either on contract or quasi contract. The reasoning of the South Dakota court is convincing.

█ It follows that the bankrupt on disbarment lost his lien on the cause of action and on the papers relating to it and was entitled to no compensation from his client, and that the trustee in bank-

ruptcy was in error in opposing substitution and in retaining the papers against the client's demand.

3. It may well be that even if the trustee had a lien on the papers, the state court where the suit to which the papers were an incident was pending, rather than the bankruptcy court, would be the proper forum in which to determine the value of the lien. In New York an attorney's lien on papers is subject to summary order of the court of which the attorney is or was an officer. See Matter of Niagara Power Co., 203 N.Y. 493, 97 N.E. 33, 38 L.R.A.(N.S.) 207, Ann.Cas.1913B, 234; Robinson v. Rogers, 237 N.Y. 467, 143 N.E. 647, 33 A.L.R. 1291; 'Matter of Makames, 238 App.Div. 534, 265 N.Y.S. 515. But since it is clear in this case that the trustee had no lien and no right to compensation from the bankrupt's client, a ruling on this point is not required.

The order will be reversed, and the trustee's petition will be dismissed.